**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

—————————————————————— :
WAYNE MORELLO, *individually and*      :      Civil Action No. 17-13706 (FLW) (DEA)
*on behalf of all others similarly*      :
*situated,*      :
      :
            Plaintiff,      :      **OPINION**
      :
    v.      :
      :
AR RESOURCES, INC.,      :
      :
           Defendant.      :
—————————————————————— :

**<u>WOLFSON, United States District Judge</u>:**

      Plaintiff Wayne Morello ("Plaintiff") initiated this putative class action against Defendant

AR Resources, Inc. ("Defendant" or "ARR"), a debt collection agency, alleging that he received

a debt collection letter from Defendant that violated the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 *et seq.*  Presently before the Court is Defendant's Motion to

Dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state

a claim upon which relief can be granted.  For the reasons that follow, Defendant's Motion is

denied.

**I.**       **<u>BACKGROUND</u>**[1]

---

[1] For the purposes of the instant Motion, the Court will accept as true the facts alleged in the
Complaint, drawing all inferences in favor of Plaintiff, the non-moving party.  *See Newman v.
Beard*, 617 F.3d 775, 779 (3d Cir. 2010) (observing that, on a motion to dismiss, the court must
"accept all factual allegations as true, construe the . . . complaint in the light most favorable to
[the plaintiff], and determine whether, under any reasonable reading of the amended complaint,
he may be entitled to relief.").

According to the Complaint, Plaintiff is a "consumer"[2] and Defendant is a "debt collector,"[3] as those terms are defined under the FDCPA. Complaint ("Compl."), ¶¶ 6, 9. At some point prior to April 30, 2017, Plaintiff incurred a debt obligation (the "Debt") to Barron Emergency Physicians ("Barron"), which Debt was "primarily for personal, family, or household purposes." *Id.* at ¶¶ 15-16. Thereafter, the Debt was referred to Defendant for collection purposes. *Id.* at ¶ 21.

On December 15, 2017, Plaintiff received a one-page debt collection letter (the "Collection Letter") from Defendant. *Id.* at ¶ 24. Defendant's name, address, and telephone number appear in a letterhead at the top of the Collection Letter. *Id.* at Ex. A. Next, the Collection Letter states that Barron referred the Debt to Defendant for collection, and directs Plaintiff to "remit payment in full" to Defendant to "avoid further collection activity." *Id.* The Collection Letter then provides:

> If you would like to pay by phone, or have any questions, please contact a representative toll-free at 856-378-0192. Calls to and from our location may be monitored or recorded for quality and training purposes.
>
> You may also visit us at WWW.ARRESOURCESINC.COM to make a payment online. Your pin number is [REDACTED].

---

[2] The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

[3] The FDCPA defines a "debt collector," in relevant part, as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6).

> If you wish to pay by credit card, please fill in the instructions below and return in the enclosed envelope.
>
> If you carry any insurance that may cover this obligation, please contact our office at the toll-free number above.

*Id.* Finally, as required under 15 U.S.C. § 1692g, the Collection Letter concludes with the following validation notice (the "Validation Notice"), which is set forth in bold text:

> **Unless you notify this office within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days of receiving this notice this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request from this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.**

*Id.* (emphasis in original).

On December 27, 2017, Plaintiff filed the Complaint, alleging that the Collection Letter violates §§ 1692g(a)(3) and 1692e(10) of the FDCPA. ECF No. 1. The thrust of the Complaint surrounds Defendant's inclusion of the following language (the "Insurance Language") in the Collection Letter: "If you carry any insurance that may cover this obligation, please contact our office at the toll-free number above." Compl., Ex. A. Specifically, Plaintiff alleges that the Insurance Language overshadows or contradicts the provision in the Validation Notice indicating that any dispute of the Debt must be in writing, because the Insurance Language could mislead the least sophisticated debtor into believing that he or she could dispute the Debt by calling Defendant at the listed telephone number. *See* Compl. ¶¶ 30-58.

Defendant filed the instant Motion to Dismiss on January 26, 2018. ECF No. 5. Plaintiff filed an opposition brief on February 20, 2018. ECF No. 8. On February 26, 2018, Defendant submitted a letter, pursuant to Local Civil Rule 7.1(d)(4), indicating that no reply brief was necessary.

## II.    **LEGAL STANDARD**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). Although Federal Rule of Civil Procedure 8(a)[4] does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In accordance with the pleading requirements set forth in *Twombly* and *Iqbal*, the Third Circuit has formulated "a three-step process for district courts to follow in reviewing the

---

[4] In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court reaffirmed that Federal Rule of Civil Procedure 8(a) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

sufficiency of a complaint." *Robinson v. Family Dollar Inc.*, 679 F. App'x 126, 131 (3d Cir. 2017); *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the reviewing court "must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citation, quotation marks, and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (citation and quotation marks omitted). Finally, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citation, quotation marks, and brackets omitted). This last step of the plausibility analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

As noted, Plaintiff alleges that the Collection Letter he received from Defendant was in violation of §§ 1692g and 1692e of the FDCPA, because the Insurance Language would mislead the least sophisticated debtor into believing that he or she could dispute a debt by calling the listed telephone number, thereby foregoing his or her statutory right to dispute a debt. Defendant moves to dismiss the Complaint, arguing that the Insurance Language "simply invited [Plaintiff] to call ARR if he had insurance that may cover the debt," and thus, did not overshadow or contradict the Validation Notice. Def.'s Br. at 1. Before turning to the parties' arguments regarding the sufficiency of the Complaint, I will briefly review the statutory background and relevant case law that guides my analysis.

### A.   15 U.S.C. § 1692g

Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). The FDCPA regulates interactions between "consumers" and "debt collectors," as those terms are defined thereunder, by prohibiting debt collectors from engaging in certain conduct. *Id.*; *see generally* 15 U.S.C. §§ 1692b-1692j. To foster compliance with its requirements, the FDCPA "permits private suits against debt collectors who violate its provisions." *Jerman*, 559 U.S. at 612 (citing 15 U.S.C. § 1692k(a)). The Third Circuit has advised that, "[a]s remedial legislation, the FDCPA must be broadly construed in order to give full effect" to the purposes for which it was enacted. *Caprio v. Healthcare Revenue Recovery Grp.*, LLC, 709 F.3d 142, 148 (3d Cir. 2013).

Relevant here, debt collectors must comply with the debt validation provisions of § 1692g, which were designed "to guarantee that consumers would receive adequate notice of their rights under the [FDCPA]." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000). Specifically, § 1692g(a) provides that, within five days after an initial communication with a consumer in connection with the collection of any debt, a debt collector must send the consumer a written letter containing a validation notice with the following information:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). Taken together, "[p]aragraphs 3 through 5 of section 1692g(a) contain the validation notice—the statements that inform the consumer how to obtain verification of the debt and that he has thirty days in which to do so." *Wilson*, 225 F.3d at 353-54. Significantly, although not expressly set forth in the statute, the Third Circuit has held "that subsection (a)(3), like subsections (a)(4) and (a)(5), contemplates that any dispute, to be effective, must be *in writing*." *Graziano v. Harrison*, 950 F.2d 107, 112 (3d Cir. 1991) (emphasis added); *Laniado v. Certified Credit & Collection Bureau*, 705 F. App'x 87, 89 (3d Cir. 2017) ("[I]n order to be effective, the dispute must be in writing.").

Subsection b of § 1692g then provides:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C.A. § 1692g(b). In short, § 1692(b) requires "the debt collector to cease all collection efforts if the consumer provides written notice that he or she disputes the debt or requests the name of the original creditor until the debt collector mails either the debt verification or creditor's name to the consumer." *Wilson*, 225 F.3d at 354.

As noted, the animating purpose behind § 1692g is to ensure that debtors receive adequate notice of their rights under the law. *See Caprio*, 709 F.3d at 148. Thus, "in order to comply with the requirements of section 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter – the required notice must also be *conveyed effectively* to the debtor." *Wilson*, 225 F.3d at 354 (emphasis added); *Graziano*, 950 F.2d at 111 ("[S]tatutory notice must not only explicate a debtor's rights; it must do so effectively."). In essence, this means that the validation notice "must not be overshadowed or contradicted by other messages or notices from the debt collector," such that the debtor could be misled into foregoing a statutory right. *Laniado*, 705 F. App'x at 89; *see* 15 U.S.C. § 1692g(b).

To determine whether the validation notice is "overshadowed or contradicted" by other messages or notices form the debt collector, courts within the Third Circuit apply the standard of the "least sophisticated debtor." *Caprio*, 709 F.3d at 149. "The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011) (citation and internal quotation marks omitted). The least sophisticated debtor standard is thus "less demanding than one that inquires whether a particular debt collection communication would mislead or deceive a reasonable debtor." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008). Under this standard, a validation notice is overshadowed or contradicted by other communications from the debt collector where those communications "'would make the least sophisticated debtor uncertain as to her rights.'" *Wilson*, 225 F.3d at 357 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996)).

Nonetheless, the least sophisticated debtor standard "does not go so far as to provide solace to the willfully blind or non-observant." *Id.* at 299. Thus, "although this standard protects

naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Wilson*, 225 F.3d at 354-55 (citation omitted). Indeed, "[e]ven the least sophisticated debtor is bound to read collection notices in their entirety." *Campuzano-Burgos*, 550 F.3d at 299.

**B.    Relevant Case Law**

Here, Plaintiff alleges that the Insurance Language violates § 1692g of the FDCPA, because it could mislead the least sophisticated debtor into believing that he or she could dispute a debt by calling the listed telephone number, and thus, that the Collection Letter fails to effectively convey to debtors that all disputes must be submitted in writing to be effective. As a result, Plaintiff avers that the Insurance Language could mislead the least sophisticated debtor into foregoing his or her statutory right to dispute a debt. In support of his position, Plaintiff relies primarily on the Third Circuit's decisions in *Graziano*, *Caprio*, and *Laniado*, as well as this Court's decisions in *Kassin v. AR Res., Inc.*, No. 16-4171, 2017 WL 1086760 (D.N.J. Mar. 22, 2017) ("*Kassin I*") and *Kassin v. AR Res., Inc.*, No. 16-4171, 2017 WL 4316391 (D.N.J. Sept. 28, 2017) ("*Kassin II*").

First, in *Graziano*, the plaintiff-debtor alleged, in relevant part, that language in a debt collection letter threatening legal action within ten days unless the debt was resolved in that time violated § 1692g of the FDCPA. *See* 950 F.2d at 109. In the proceedings below, the district court granted summary judgment against the debtor on his § 1692g claim, reasoning that, despite the inclusion of the demand for payment within ten days, the validation notice in the letter adequately advised the debtor of his rights. *Id.* at 111. On appeal, the Third Circuit reversed, finding that the "juxtaposition of two inconsistent statements" – the demand for payment and the

language providing that a debtor has thirty days to dispute a debt – "rendered the statutory notice invalid under section 1692g." *Id.* Specifically, the court reasoned that there was "a reasonable probability that the least sophisticated debtor, faced with a demand for payment within ten days and a threat of immediate legal action if payment is not made in that time, would be induced to overlook his statutory right to dispute the debt within thirty days." *Id.*

Next, in *Caprio*, a debtor filed a complaint against a debt collector, alleging that language in a one-page, double-sided collection letter violated § 1692g, "because the least sophisticated debtor could reasonably believe that he could effectively dispute the validity of the debt by making a telephone call, even though such disputes must be made in writing in order to be effective in [the Third Circuit]." 709 F.3d at 150-51. Specifically, the debtor argued that the validation notice, which was printed on the back side of the letter, was contradicted or overshadowed by the following language, which appeared on the front side of the letter:

> If we can answer any questions, or if you feel you do not owe this amount, **please call** us toll free at **800–984–9115** or write us at the above address. This is an attempt to collect a debt. Any information obtained will be used for that purpose. (NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.)

*Id.* at 145 (emphasis in original).

The district court in *Caprio* granted the debt collector's motion for judgment on the pleadings. *Id.* at 146. On appeal, the Third Circuit reversed, holding that the "please call" language in the collection letter overshadowed and contradicted the validation notice, because it could be interpreted by the least sophisticated debtor as providing that he or she could dispute a debt by phone. *See id.* at 152-54. In reaching that conclusion, the court looked to both the "form" and the "substance" of the letter, finding as follows:

> We do acknowledge that this "please call" language could be read as nothing more than a mere invitation given other aspects of the Collection Letter. In fact, the District Court may be correct that "[a] more appropriate reading of the Collection Letter reveals that the

language on the front of the letter reflects an invitation to communicate, and the validation notice on the back of the letter sets forth the Plaintiff's rights." *Caprio*, 2012 WL 847486, at *5. The short paragraph containing this "please call" language actually included the following instruction: "(NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.)" (JA Vol. II at 16.) Already "charged with reading the Collection Letter in its entirety," *Caprio*, 2012 WL 847486, at *5 (citing *Campuzano–Burgos*, 550 F.3d at 298), Caprio would then find the required Validation Notice on this "REVERSE SIDE." As the District Court also noted, the Collection Letter did not expressly state that a telephone call would be sufficient to dispute the debt.

However, it is not our responsibility to decide whether the debtor or the debt collector offers "a more appropriate reading" of a debt collection letter. We instead must interpret the document from the perspective of "least sophisticated debtor." Designed to protect naïve and even gullible individuals, "the 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Wilson*, 225 F.3d at 354 (quoting *Smith*, 167 F.3d at 1054).

Pursuant to this standard, we begin with the "substance" of the Collection Letter sent out by HRRG. This document instructed Caprio to call or write "if you feel you do not owe this amount." (JA Vol. II at 16.) At the very least, the "least sophisticated debtor" could reasonably "feel" that he or she "do[es] not owe this amount" if he or she actually disputed the debt and its validity. If so, this "please call" language basically instructed such a debtor to call or write in order to dispute the debt itself. While he or she certainly could (and, in actuality, must) raise a debt dispute in writing, it is well established that a telephone call is not a legally effective alternative for disputing the debt. *See Graziano*, 950 F.2d at 112.

With respect to the "form" of HRRG's Collection Letter, we observe that even more attention was then drawn to this deficient alternative because both the words "please call" and the toll-free telephone number itself were printed in bold. This telephone number appeared again in the letterhead at the top of the Collection Letter in an even larger font. In contrast, no such bold print was used in either the phrase "write us at the above address" or in the Validation Notice. Likewise, HRRG's mailing address only appeared in the letterhead, where it was actually printed in a smaller font than HRRG's toll-free telephone number. We also note that—unlike the "please call" language—the required Validation Notice was relegated to the back side of the Collection Letter. Especially given these circumstances, it appears more likely that the "least sophisticated debtor" would take the easier—but legally ineffective—alternative of making a toll-free telephone call to dispute the debt instead of going to the trouble of drafting and then mailing a written dispute.

We therefore conclude that the Collection Letter was deceptive because "'it can be reasonably read to have two or more different meanings, one of which is inaccurate,'" *i.e.*, that Caprio could dispute the debt by making a telephone call. *Wilson*, 225 F.3d at 354 (quoting *Russell*, 74 F.3d at 35). In short, the Validation Notice was overshadowed

and contradicted because the "least sophisticated debtor" would be "'uncertain as to her rights.'" *Id.* (quoting *Russell*, 74 F.3d at 35).

*Id.* at 151-52.

Similarly, in *Laniado*, the Third Circuit considered whether a debt collection letter containing language inviting the debtor to call the debt collector "should there be any discrepancy" violated § 1692g of the FDCPA. 705 F. App'x at 88. Relying on *Caprio*, the court reversed the district court's order dismissing the case, finding that the cited language could mislead the least sophisticated debtor into foregoing his or her statutory right to dispute a debt.

*See id.* at 90-92. Specifically, the court reasoned, in relevant part, as follows:

> Considering the substance of the [letter], we find that it is materially indistinguishable from the letter at issue in *Caprio*. The debt collector's letter in *Caprio* instructed "to call or write 'if you feel you do not owe this amount.'" *Id.* at 151 (citation omitted). "At the very least, the 'least sophisticated debtor' could reasonably 'feel' that he or she 'do[es] not owe this amount' if he or she actually disputed the debt and its validity. If so, this 'please call' language basically instructed such a debtor to call or write in order to dispute the debt itself." *Id.* at 151. Likewise, the letter currently before us instructed [the debtor] to call either a toll-free telephone number or a 24-hour automated customer service number should there be any discrepancy. The least sophisticated debtor could reasonably believe there was a discrepancy if he or she "actually disputed the debt and its validity." "If so, this 'please call' language basically instructed such a debtor to call . . . to dispute the debt itself. While he or she certainly could (and, in actuality, must) raise a debt dispute in writing, it is well established that a telephone call is not a legally effective alternative for disputing the debt." *Id.* (citing *Graziano*, 950 F.2d at 112).
>
> According to [the debt collector] (and the District Court), the [letter] "'is a simple attempt to collect a debt'" . . . , "invites the receiver to discuss the account and settlement" . . . , and "is merely continued collection activity and encourages settlement" . . . . [The debt collector] argues that the language at issue here must be understood as a continuation of its statements in the preceding paragraph reminding [the debtor] of the placement of the account for collection, indicating that settlement is expected with [the debt collector], and requesting payment in full. The letter could perhaps be read as nothing more than an invitation to communicate, pay, or reach some sort of compromise. "However, it is not our responsibility to decide whether the debtor or the debt collector offers 'a more appropriate reading' of a debt collection letter." *Id.* In fact, we ruled in Caprio's favor even though we acknowledged that "this 'please call' language could be read as nothing more than a mere invitation given other aspects of the Collection Letter." *Id.* We did so because the document must be understood from the perspective of the least sophisticated debtor—a standard that protects even the gullible. *Id.* at 249, 251.

*Id.* at 90–91.

Finally, and most relevant to the instant case, in *Kassin I*, a case that I decided, the debtor alleged that a collection letter provided by ARR – the same defendant named here – violated § 1692g of the FDCPA, based on the inclusion of insurance language that is nearly identical to the Insurance Language at issue in this case. *See Kassin I*, 2017 WL 1086760 at *1. Specifically, the subject insurance language provided: "If you carry any insurance that may cover this obligation, please contact [ARR's] office at the number above." *Id.* As in the present case, the debtor in *Kassin I* argued that the insurance language could cause the least sophisticated debtor to overlook his statutory right to dispute a debt, because it "mistakenly suggests that the debt may be disputed by telephone, when, in actuality, a dispute must be sent in writing in order to be legally effective." *Id.* at *2. ARR moved to dismiss the complaint, arguing that the letter did not contradict or overshadow the validation notice, because it did not "explicitly direct a debtor to dispute a debt by telephone." *Id.* at *3. Specifically, ARR argued that the letter merely presented the debtor "with two mutually exclusive options: (1) call ARR with insurance information that should cover the debt or (2) write to ARR within thirty days to dispute the debt." *Id.*

In denying ARR's motion to dismiss, I found that the debtor sufficiently alleged a violation of § 1692g, because the insurance language could "reasonably be interpreted to suggest that the debt could be disputed by calling [ARR]." *Id.* Specifically, I reasoned:

> The debt collection letter, here, begins by explaining that a debt, in the amount of $3756.55, has been referred to ARR by Select Medical for collection purposes, and then directs Plaintiff to call Defendant in the event that the debt is covered under Plaintiff's insurance policy. Compl. ¶ 29, Ex. A. Although the letter concludes with a validation notice, in which Plaintiff's rights pursuant to the FDCPA are explained, Compl. ¶ 29, Ex. A, the insurance policy language may be susceptible to different meanings under the least sophisticated debtor standard. For example, a least sophisticated debtor could reasonably

13

believe that he or she does not owe, or is not responsible for, a debt, because it is covered under the terms of his or her insurance plan. Or, in an alternative scenario, a least sophisticated debtor may mistakenly receive a debt collection notice, when the original service provider was already compensated by the debtor's insurance policy. Hence, the debtor, in either situation, may mistakenly dispute the debt by calling the collection agency, because the letter instructs that issues with coverage under an insurance policy can be handled by telephone. *See Caprio*, 709 F.3d at 151. Given that the complained-of language may mislead the least sophisticated debtor, it is therefore inappropriate for the Court to dismiss Plaintiff's Complaint. *Ashkenazi v. Certified Credit & Collections Bureau*, No. 14-7627, 2016 WL 1228843 (D.N.J. Mar. 29, 2016) (concluding that the least sophisticated debtor could plausibly be misled by a debt collection letter that directed the debtor to contact the debt collector by telephone, if the debt was covered under the debtor's insurance plan).

*Id*. at *4.

Following the issuance of *Kassin I*, ARR filed a motion for leave to file an interlocutory appeal, arguing that there was a substantial ground for difference of opinion in the controlling law in this District, because my decision in *Kassin I* ran contrary to *Cruz v. Recoveries*, No. 15-0753, 2016 WL 3545322 (D.N.J. June 28, 2016). *See Kassin II*, 2017 WL 4316391 at *3. In *Cruz*, the debtor alleged that a collection letter violated § 1692g, because the validation notice was overshadowed or contradicted by the following language in the letter: "If you have insurance that may pay all or a portion of this debt, that information can be submitted by calling 1-800-220-0260 . . . ." 2016 WL 3545322 at *1. The court dismissed the debtor's complaint, finding that the insurance language did not overshadow or contradict the validation notice, because, in the court's view, the insurance provision amounted to a mere request for information. *See id*. at *3-4.

In rejecting ARR's motion for leave to file an interlocutory appeal in *Kassin II*, I found that there was no difference of opinion between *Kassin I* and *Cruz* regarding the proper legal standard, because both courts applied the least sophisticated debtor standard, and merely reached different conclusions based on the specific facts of each case. *Kassin II*, 2017 WL 4316391 at

*3.  I further noted that while the court in *Cruz* reached a different conclusion than *Kassin I*, the insurance language at issue in *Cruz* differed in substance from the language at issue in ARR's debt collection letter.  *Id*.

### C.    Analysis

Here, as *Kassin* and the Third Circuit decisions cited above, I find that the Insurance Language contradicts the Validation Notice, because the least sophisticated debtor could reasonably read the Insurance Language as providing that he or she need not dispute a debt in writing, and thus, the Insurance Language could confuse or mislead the debtor into foregoing his or her statutory right to dispute a debt.  Significantly, § 1692g(a)(3), as interpreted by the Third Circuit, requires debt collectors to include within the validation notice a statement advising the debtor that the debt will be assumed as valid unless, within thirty days after receipt of the notice, the debtor "disputes the validity of the debt, *or any portion thereof*," in writing.  15 U.S.C. § 1692g(a)(3) (emphasis added); *see Laniado*, 705 F. App'x at 89.  Stated differently, to comply with § 1692g, a debtor collector must inform the debtor that, if the debtor seeks to dispute even a "portion" of the debt, such a dispute must be in writing to be effective.  Viewed in this context, the Court finds that the least sophisticated debtor could reasonably interpret the Insurance Language as providing that, to the extent the debtor believes that an insurance provider is responsible for payment of a portion of the debt (*e.g.*, if the debtor only believes he or she is responsible for a co-payment), that the debtor may dispute that portion of the debt obligation by calling Defendant, rather than disputing the debt in writing.  Indeed, as the *Caprio* court acknowledged, it is conceivable that the least sophisticated debtor would pursue the legally ineffective avenue of calling Defendant, rather than taking the more burdensome route of submitting a dispute in writing.  *See Caprio*, 709 F.3d at 152 ("[I]t appears more likely that the

15

'least sophisticated debtor' would take the easier—but legally ineffective—alternative of making a toll-free telephone call to dispute the debt instead of going to the trouble of drafting and then mailing a written dispute."). Accordingly, because the Insurance Language could mislead the least sophisticated debtor into foregoing his or her statutory right to dispute a debt, I find that the Validation Notice fails to meet the requirements of § 1692g.

Defendant's arguments to the contrary fail to convince me otherwise. In that regard, notwithstanding the guiding precedent cited above, Defendant makes two main arguments as to why this Court should depart from *Kassin I* and find that Plaintiff fails to sufficiently allege a violation of § 1692g. First, Defendant argues that this case is analogous to the Third Circuit's decision in *Wilson*, which decision supports dismissing this case. *See* Def.'s Br. at 6-8. Second, Defendant directs this Court to various non-binding decisions, from both within and outside of this Circuit, where courts have dismissed FDCPA claims that Defendant contends were based on language that is comparable to the Insurance Language. *See id*. at 9-13. I disagree.

First, the instant case is distinguishable from *Wilson*, and thus, the Third Circuit's ruling in that case does not control the outcome here. In *Wilson*, the Third Circuit, on appeal of the district court's order dismissing the case, considered whether language contained in a debt collection letter, "which notified the debtor that his account has been placed with the debt collector for 'immediate collection,' and that it 'shall afford [the debtor] the opportunity to pay this bill immediately and avoid further action against you,'" contradicted or overshadowed the required validation notice under § 1692g. 225 F.3d at 351. While the court noted that the collection letter at issue presented a "close question," it held that the subject language did not overshadow or contradict the validation notice, reasoning as follows:

> We find that, contrary to [the debtor's] argument, the collection letter did not violate section 1692g of the Act for the reason that the first two paragraphs of the collection

letter neither overshadow nor contradict the validation notice. First of all, upon review of the physical characteristics and form of the letter, we have concluded that the first two paragraphs of the letter do not overshadow the validation notice. The validation notice was presented in the same font, size and color type-face as the first two paragraphs of the letter. Moreover, the required notice was set forth on the front page of the letter immediately following the two paragraphs that [the debtor] contends overshadow and contradict the validation notice. Accordingly, [the debtor's] overshadowing claim must fail.

Second, an actual or apparent contradiction between the first two paragraphs and the third one containing the validation notice does not exist here. Unlike the collection letter in *Graziano*, which demanded payment within ten days and threatened immediate legal action if payment was not made in that time, [the defendant's] letter makes no such demand or threat. Instead, [the debtor] is presented with two options: (1) an opportunity to pay the debt immediately and avoid further action, or (2) notify [the defendant] within thirty days after receiving the collection letter that he disputes the validity of the debt. As written, the letter does not emphasize one option over the other, or suggest that [the defendant] forego the second option in favor of immediate payment. Thus, we find the least sophisticated debtor would not be induced to overlook his statutory right to dispute the debt within thirty days.

225 F.3d at 356.

Contrary to Defendant's argument, however, I find that the Insurance Language at issue in this case falls closer to the prohibited language in *Graziano*, *Caprio*, and *Laniado* than the collection letter in *Wilson*. To that end, as I have already found, the least sophisticated debtor could reasonably interpret the Insurance Language as providing that, in the event the debtor seeks to dispute personal liability for a debt by claiming that his or her insurance provider is the liable party, the debtor may call the debt collector rather than submitting the dispute in writing. Although even the least sophisticated debtor is charged with reading the entirety of the Collection Letter, including the Validation Notice that follows the Insurance Language, under these circumstances, it is plausible that the least sophisticated debtor would interpret the Insurance Language as providing that he or she could also dispute the debt through a legally invalid method – calling Defendant. As such, the Insurance Language resembles the situation in *Graziano*, because its stands in juxtaposition to the language in the Validation Notice providing

that a dispute must be in writing to be effective. Put differently, the Insurance language

contradicts the required language in the Validation Notice, because the least sophisticated debtor

could be confused or misled into believing that he or she could dispute the debt by calling

Defendant, and thus, forego his or her statutory right under the FDCPA to dispute the debt.

Accordingly, I reject Defendant's proposed analogy to *Wilson*.[5]

Second, none of the non-binding decisions cited by Defendant persuade this Court to find

that the Insurance Language does not overshadow or contradict the Validation Notice. At the

outset, many of the decisions cited by Defendant include language that merely invites the debtor

to call the debt collector to provide information other than potential insurance coverage, such as

attorney information or payment details, and thus, are based on facts distinguishable from the

those presented in this case. *See*, *e.g.*, *Rosa v. Encore Receivable Mgmt., Inc.*, No. 15-2311,

2016 WL 4472951, at *2 (D.N.J. Aug. 23, 2016) (holding that a statement inviting the debtor to

---

[5] Defendant also points to *Szczurek v. Prof'l Mgmt. Inc.*, 627 F. App'x 57, 58 (3d Cir. 2015), where the Third Circuit affirmed the dismissal of a debtor's claim that a collection letter with the following language violated § 1692g of the FDCPA: "If this debt is for medical services and you have insurance that may pay all or a portion of this debt, that information can be submitted by calling 800 220–0260 or by completing the information on the reverse side of this letter and returning the entire letter to this office." *Id*. at 59. Defendant's reliance on *Szczurek* is misplaced, however, because, as the district court in that case noted, the debtor's § 1692g claim was premised *solely* on another sentence in the collection letter, without any reference to the cited insurance language:

> The plaintiff complains of *one sentence*, the second in the first paragraph of the letter, which stated "To avoid further contact from this office regarding your past due account, please send the balance due to our office and include the top portion of this letter with your payment."

*Szczurek v. Prof'l Mgmt., Inc.*, 59 F. Supp. 3d 721, 724 (E.D. Pa. 2014) (emphasis added), *aff'd*, 627 F. App'x 57 (3d Cir. 2015). Indeed, in affirming the district court's decision, the Third Circuit confined its analysis to that single "contact" sentence, without referencing the insurance sentence in the letter. *See Szczurek*, 627 F. App'x at 61-62. Accordingly, because the debtor's FDCPA claim was not based on the insurance language in the collection letter, and because neither the district court nor the Third Circuit analyzed that language in dismissing the complaint, *Szczurek* is of no import for the purposes of this case.

call the debt collector if "payment has already been made" did not contradict or overshadow the validation notice); *Panto v. Prof'l Bureau of Collections*, No. 10-4340, 2011 WL 843899, at *3 (D.N.J. Mar. 7, 2011) (holding that a statement in a collection letter inviting the debtor to provide the name, address, and phone number of his attorney did not overshadow or contradict the validation notice); *Vetrano v. CBE Grp., Inc.*, No. 15-3185, 2016 WL 4083384, at *6-7 (E.D.N.Y. Aug. 1, 2016) (finding that a statement directing the debtor to call the debt collector "to discuss paying with a check by phone, credit card or debit card" did not contradict or overshadow the validation notice).

Moreover, I respectfully disagree with *Cruz* and *Anela v. AR Res., Inc.*, No. 17-5624, 2018 WL 2961813 (E.D. Pa. June 12, 2018), the only two decisions cited by Defendant where courts found that insurance language similar to the Insurance Language at issue in this case did not overshadow or contradict the validation notice. *See Cruz*, 2016 WL 3545322 at *3-4 (holding that language inviting the debtor to call the debt collector "[i]f you have insurance that may pay all or a portion of this debt" did not contradict or overshadow the validation notice); *Anela*, 2018 WL 2961813 at *5 (finding that language inviting the debtor to call the debt collector "[i]f you carry any insurance that may cover this obligation" did not violate § 1692g). In both of those cases, the courts rested on a distinction between "resolving" and "disputing" a debt to find that the insurance language at issue did not contradict or overshadow the required language in the validation notice. *See Cruz*, 2016 WL 3545322 at *4 (finding that there was no violation of § 1692g, where the insurance language made "no reference to disputing the debt, only the provision of insurance information related to the debt."); *Anela*, 2018 WL 2961813 at *4 ("The 'least sophisticated debtor' who reads the letter in its entirety would not confuse his or

her option to call to resolve the debt with his or her option to write to dispute the debt.").  More specifically, the *Anela* court explained its reasoning as follows:

> . . . The Letter can invite the debtor to call to discuss insurance-related matters without violating the FDCPA provision mandating that disputes be submitted in writing. The Insurance Language inviting the debtor's call makes no reference to disputing the debt. It does not encourage or even suggest an alternative means of disputing the debt. Rather, the Letter requests the debtor call ARR to provide insurance information to pay the debt without interfering with the separate validation notice. Even when viewed from the perspective of the "least sophisticated debtor," the Insurance Language does not overshadow or contradict the validation notice, and therefore does not violate the FDCPA.

2018 WL 2961813 at *5.

While I acknowledge that the case before me presents a close call, and appreciate the distinction that these courts have drawn between disputing a debt and resolving a debt, I find that the Insurance Language at issue in this case is so closely related to disputing a debt that it could mislead the *least* sophisticated debtor into foregoing his or her statutory right to dispute a debt. Significantly, as *Caprio* and *Laniado* illustrate, the Third Circuit has taken a broad view of what sort of "call" language contradicts or overshadows a validation notice, emphasizing that, in applying the least sophisticated debtor standard, the operative question is not whether such language "can be read as nothing more than a mere invitation" to communicate, pay, or reach some sort of compromise.  *Caprio*, 709 F.3d at 151; *see Laniado*, 705 F. App'x at 90.  Indeed, to hold otherwise would undermine the least sophisticated debtor standard altogether, by failing to protect those most susceptible to the harms that Congress intended to prevent in enacting the FDCPA.  Viewed from this perspective, this Court declines to impose on the *least* sophisticated debtor the obligation to draw a narrow legal distinction between "resolving" and "disputing" a debt.  Just as the *Laniado* court found that the least sophisticated debtor could reasonably interpret language inviting a call in the event of "any discrepancy" as providing that a dispute

may be submitted by phone, here, it does not require a bizarre or idiosyncratic interpretation of the Insurance Language to find that the least sophisticated debtor could read the same as providing that, where the debtor believes his or her insurance carrier was liable for the debt, such a dispute may be submitted by phone, rather than in writing.  Thus, I reject Defendant's argument that the Insurance Language is susceptible to only one interpretation as inconsistent with the least sophisticated debtor standard.

In sum, while delving into the "sophistication" levels of a debtor is an inherently difficult task, at a minimum, I find that language inviting a debtor to call the debt collector if another party (*i.e.*, his or her insurance carrier) is liable for all or a portion of the debt obligation, rather than the debtor personally, could mislead that debtor into foregoing his or her statutory right to dispute a debt.  Accordingly, because the Insurance Language contradicts the required language in the Validation Notice, I find that Plaintiff has sufficiently alleged a § 1692g claim.[6]

## IV.   **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is denied.

Dated:  August 16, 2018                                     /s/ Freda L. Wolfson
                                                            Hon. Freda L. Wolfson
                                                            United States District Judge

---

[6] Plaintiff further alleges that, as a result of the Insurance Language, "Defendant violated 15 U.S.C. § 1692e(10) by falsely representing and misleading Plaintiff into believing that if he wished to dispute the alleged debt or any portion thereof," he could call Defendant at the listed telephone number.  Compl. ¶ 49.  Section 1692e(10) prohibits debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).  The Third Circuit has instructed that, "[w]hen allegations under 15 U.S.C. § 1692e(10) are based on the same language or theories as allegations under 15 U.S.C. § 1692g, the analysis of the § 1692g claim is usually dispositive." *Caprio*, 709 F.3d at 155 (citation and internal quotation marks omitted).  As that is the case here, for the same reasons set forth in this Court's analysis of Plaintiff's § 1692g claim, the Court denies Defendant's Motion to Dismiss Plaintiff's § 1692e(10) claim.